R.L. HUSZAGH, Plaintiff,

v.

Diane H. D'AMICO, guardian of the Estate of Dorothea Wickett Huszagh, et al., Defendant,

v.

UNITED STATES of America, Intervenor.

In the Matter of the ESTATE OF Dorothea W. HUSZAGH, a disabled person,

v.

UNITED STATES of America, Intervenor.

Nos. 90 C 6787, 90 C 6788.

United States District Court, N.D. Illinois, Eastern Division.

Sept. 29, 1994.

See also: 846 F.Supp. 1352.

R.L. Huszagh, pro se.

Robert E. McKenzie, Chicago, IL, for plaintiff.

Mark A. Winer, Barbara E. Seaman, U.S. Dept. of Justice—Tax Div., Washington, DC, for intervenor.

Michael J. Byn, Flanner, Hoover & Boyd, Libbertyville, IL, for defendant.

## MEMORANDUM AND ORDER

MORAN, Chief Judge.

After this court entered what it believed to be a final judgment in those actions, plaintiff R.L. Huszagh (plaintiff) filed a motion for reconsideration or, alternatively, for alteration of judgment. The legal issues have been mushrooming ever since, and this court is left with the unhappy task of trying to determine whether plaintiff must be accorded relief that is against his own interests.

Plaintiff, in his motion, insists that any interest he might have had in certain Texas oil and gas properties were destroyed by this court's March 18, 1994 order, which improperly directed that D'Amico hold the property in trust, with the periodic payments going to the IRS. That, he contended, is not permitted by the statute; the only permissible relief was a foreclosure sale. And, he suggested almost in passing, such a sale was not something this court could order since foreclosures are *in rem* and are therefore local actions that must be maintained where the properties are located. The government responded briefly, devoting most of its attention to the scope-of-remedy issue. Next came plaintiff's full-blown reply, 15 pages

only because the spacing between lines had been squeezed, and citing more than 20 cases on the jurisdictional claim, as well as a number of secondary sources. The government filed a supplemental response, 14 pages, and plaintiff countered with a 13–page reply, again with squeezed spacing and about as many cases, and with even more contentions. If we were to address everything we would undoubtedly have to issue a 20– or 25–page opinion pontificating about some rather ancient and obscure concepts.

The local action doctrine, which this court had occasion to discuss in *Home Savings Association of Kansas City, F.A. v. State Bank of Woodstock*, 1991 WL 23638 (N.D.Ill. 1991), is indeed ancient and obscure. In this age of rapid transportation and communication there appears to be little need for it, except possibly in instances where effectuation of any order concerning property requires the assistance of the state where the property is located, or where persons with interests in the property are widely scattered and the state of location is the only available neutral forum. In any event, the concept customarily invokes a number of issues that have never been definitively answered.

 We need not, however, plunge into those thickets. In this circuit at least, characterization of the action as local or transitory implicates venue rather than jurisdictional concerns. *Raphael J. Musicus, Inc. v. Safeway Stores, Inc.*, 743 F.2d 503 (7th Cir.1984). And venue objections can be waived by failing to assert them in a timely fashion. Here plaintiff did not object until after judgment. That was far too late. Moreover, the interests involved pertain to gas, oil and mineral leases. The central issue between plaintiff and the government was whether or not the government's tax lien had priority over plaintiff's interests, clearly a transitory dispute. That the government sought to foreclose upon its superior interest does not mean that relief cannot be granted in a single proceeding. We see no sound reason for compelling the government to initiate a second suit in Texas for the sole purpose of obtaining the fruits of its successful litigation in Illinois, particularly as there is nothing that requires the assistance of Texas and that cannot be obtained by coercive relief here. *Id.* at 511. Finally, we note that the relief ultimately granted here cannot be described as a foreclosure and, indeed, that is another matter of which plaintiff complains.

That complaint assumes that the court's order of May 18, 1994, by implication, reversed the court's earlier and oft repeated decision that it would not determine what interests, if any, that plaintiff might have in those leases after the tax liabilities were satisfied. That assumption is incorrect. Indeed, the remedy fashioned in the May 18, 1994 order was for the purpose of furthering the interests of all the parties. The government represented, and no one has disputed, that a sale of the interests would not produce a sufficient amount to pay the tax liabilities. Thus a sale would not make the government whole and, at the same time, would moot the dispute between plaintiff and his mother's estate as to who had superior rights—there would be nothing left to fight about. By permitting the government to recover by receipt of the periodic payments there arose at least the possibility that the government's claim could be satisfied and still leave properties with some value to the residual owner. Who that owner might be we left, and we leave, to the state courts. The interests, pursuant to the May 18, 1994 order, are being "parked" with the taxpayer, but without any determination of ultimate ownership. Admittedly, that relief stretches *United States v. Rodgers*, 461 U.S. 677, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983), a long way, but the alternative urged by plaintiff, a forced sale, would leave him with nothing. In the interest of all the parties we adhere to that stretch.

Whether considered as a motion for reconsideration or as a motion for alteration of judgment, plaintiff's motion is denied.